UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| TISHUNDA GRANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:13-cv-00204-RLY-TAB |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

The parties appeared by counsel December 10, 2014, for an oral argument on Plaintiff's appeal of her denial of disability benefits. Set forth below is the Magistrate Judge's recommended decision issued from the bench following that argument. This ruling recommends that the ALJ's determination be reversed and that this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

THE COURT: All right. We're back on the record. Everybody still with us?

MS. MARCUS: Yes, Your Honor.

MR. WOLTERING: Yes, Your Honor.

MR. KIEPER: Yes, Your Honor.

THE COURT: I appreciate your patience. I will now give you my recommended decision.

By way of background, plaintiff filed applications for disability benefits on May 26, 2010, alleging disability as of August 24, 2009, due to degenerative arthritis, high blood pressure, and nerve damage in her right lower extremity, as well as depression. The applications were initially denied.

On October 12, 2011, plaintiff appeared before an ALJ via video conference. On July 27th, 2012, the ALJ denied plaintiff's disability claim. Record at 16. The appeals counsel then denied plaintiff's request for review on September 17, 2013.

I will now recite the facts of the case briefly, but I would note that the Commissioner conceded in her brief at Docket No. 22, page 3, that the ALJ's decision accurately summarizes the relevant medical evidence. Therefore, I do not need to rehash all of the evidence. However, I'd like to emphasize a few important points.

Going back to 2007, the plaintiff underwent evaluation for complaint of bilateral tingling and numbness in her hands, in addition to back and neck pain that radiated into her right leg.

Imaging studies revealed spondylosis at C3-L4, marked disk changes at C4 through C5, and C5 through L6, with compressed cord and white matter change. Spinal surgery was recommended, and on September 26th, 2007, plaintiff underwent an anterior cervical disk excision and interbody fusion at C4 through 5, and C5 through 6 for diagnoses of central and left herniated disks with myelopathy. That's in the record at pages 262 through 263.

Plaintiff's pain subsided, but returned shortly thereafter, and she again sought treatment for her symptoms in May of 2008. By that time, plaintiff was taking several medications, including Hydrocodone, Baclofen, Gabapentin, and oral steroids in an effort to control her pain.

2

After examining her and reviewing a recent MRI, Dr. Andrew Robertson diagnosed plaintiff with multilevel degenerative facet changes at L3 through 4, L4 through L5, and L5 through S1, as well as a disk bulge at L5 through S1. Record, pages 280 through 283.

Plaintiff then began a regimen of physical therapy, medication, and nerve blocks at L3 and L5. Even with these measures, plaintiff continued to complain of pain. Plaintiff was unable to pay for her medical care at times and had to rely on hospital emergency rooms for treatment.

Beginning in August of 2008, plaintiff was repeatedly seen at Columbus Regional Hospital for back pain. Record, pages 349 through 64, and 372 through 378.

On July 27, 2009, plaintiff underwent evaluation by Dr. Stephen Kirk Douglas, MSN. I think I referred to Douglas as a doctor, let me clarify that. Stephen Kirk Douglas, MSN, also ACNP, for increasing back pain. Patient was observed to be limping and had a positive straight leg raise test on the right side. Record, at page 288.

She also complained of fatigue and low back pain that was increasing in frequency. Douglas referred plaintiff for additional imaging studies that subsequently confirmed disk protrusion and bilateral neural foraminal narrowing at L4 through 5, along with disk desiccation and protrusion with neural foraminal airway at L5 through S1. Record, pages 289 through 309.

On August 16, 2010, consultative examiner, Dr. Theodora Saddoris, examined plaintiff as part of her Social Security disability process and observed the plaintiff complained of a significant weight gain and muscle, joint and lower back pain. She walked with a limp, and was unable to engage in tandem walking due to her unsteadiness. Record, at page 383.

She had a positive right leg raise test and reduced cervical and lumbar lateral flexion and rotation. Dr. Saddoris concluded that plaintiff's condition was permanent, and due to its degenerative nature "will get worse over time." Record, at 383.

In 2010, after getting health insurance, plaintiff began seeing Dr. Dale Guse, G-U-S-E, for treatment of her back pain. That's in the record at pages 397 through 98.

Dr. Guse treated plaintiff with pain medication, including Oxycodone. She was also taking Citalopram for depression. On May 23rd, 2011, plaintiff complained of depression, insomnia, fatigue, social withdrawal, tearfulness, hypersomnolence, and tiredness during an initial visit with Dr. Bruce Riddle. Record, pages 417 through 20.

Along with the plaintiff's complaints of depression were complaints of increasing pain, and it appears Dr. Guse had difficulty formulating an effective treatment plan given the complexity of plaintiff's conditions. Record, page 425.

In early August 2011, plaintiff began complaining that she was dropping objects, and experiencing blurred vision and dizziness. A subsequent MRI revealed evidence of a previous stroke. Record, page 433.

The plaintiff testified that her chronic lower back pain prevents her from sitting for longer than 20 minutes, standing longer than five minutes, or walking even a single city block. Record, 54 through 59.

She often experiences burning sensations in her right leg, while her severe back pain requires powerful pain medications. She spends most of her day lying down. She rarely goes out, and her husband does all the cooking, cleaning, and most of the grocery shopping. When she does attempt to help him by washing the dishes, she testified that she was unable to stand long enough to finish the task due to her back pain. Record, pages 54 and 56.

Plaintiff also testified that her lack of insurance poses a serious barrier to her ability to get treatment for her condition.

4

Plaintiff raises three issues on appeal. Specifically, the plaintiff claims the ALJ erred in, number one, failing to consider plaintiff's morbid obesity; number two, dismissing plaintiff's examining opinion of record and arriving at an RFC without any medical opinions of record; and three, rendering an inaccurate Step 5 determination.

When considering this evidence, these issues, the question is whether the ALJ's decision is supported by substantial evidence. When substantial evidence in the record as a whole supports the final decision of the commissioner, it must be affirmed. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support the conclusion. Henderson versus Apfel, 179 F.3d, 507 at 512, Seventh Circuit 1999.

As a preliminary matter, I find I cannot consider the medical evidence from Dr. Guse dated August 13, 2012. That evidence was not before the administrative law judge. That evidence was presented to the appeals council and considered by it, but it declined review, and plaintiff's claim was denied. However, even without considering that evidence, I find that the ALJ erred in failing to consider the plaintiff's morbid obesity, and I will recommend a remand on that basis.

Plaintiff's treatment records reveal that she weighed 301 pounds and was 70 inches tall. Record, page 439. Her body mass index was 43.2, which is an indication of morbid obesity, a diagnosis also made by her physicians. Record, pages 397 and 414.

Despite plaintiff's diagnosis of obesity, the ALJ did not consider how her weight exacerbated her other conditions as required by the Seventh Circuit. See Goins, G-O-I-N-S, versus Colvin, 764 F.3d 677, Seventh Circuit 2014; and Arnett versus Astrue, 676 F.3d 586, Seventh Circuit 2012.

5

Specifically, in Goins, Judge Posner observed that the administrative law judge gave "meager attention" to the plaintiff's obesity on the ground that the record does not support an inability to ambulate effectively. Judge Posner went on to observe "We keep telling the Social Security Administration's administrative law judges that they have to consider an applicant's medical problems in combination."

The Court went on to state "Like most obese people, the plaintiff can walk. Her obesity is not disabling in itself, but it is an added handicap for someone who has degenerative disk disease, a narrowed spinal canal, bronchitis and a Chiari 1 malformation." "Pain and numbness in the legs caused by spinal disease are bound to be aggravated by obesity, the Court wrote.

In Goins, the plaintiff weighed approximately 250 pounds and had a BMI of more than 40. The facts of that case are remarkably similar to the facts in this case. While I won't restate them all, it is correct to observe that the administrative law judge in this case also gave meager attention to the plaintiff's obesity.

Plaintiff testified that her chronic lower back pain prevented her from sitting for longer than 20 minutes, standing longer than five minutes, or walking even a single city block. Record, pages 54 through 55.

Her medical practitioner's also diagnosed her as morbidly obese, and there is evidence in the record, particularly of Dr. Theodora Saddoris explaining how her conditions cause her to be unable to work.

In addition, in Goins, Judge Posner noted that the administrative law judge improperly relied upon boilerplate language in undermining the plaintiff's credibility. The same is true in this case. At page 22 of the record, the ALJ used the same boilerplate language to undermine the plaintiff's credibility.

6

The ALJ, in this case, ignored Social Security Ruling 02-1P, which states that "The combined effects of obesity with other impairments may be greater than might be expected without obesity."

This error is not harmless. The error is, in fact, exacerbated by the fact that the ALJ discounted the state agency review opinions affording them little weight. Record, page 23.

Dr. Saddoris examined the plaintiff, considered her weight and other impairments, found she had degenerative disk disease, which was a permanent condition that would only get worse over time. Record, pages 381 through 343.

Dr. Saddoris also reviewed plaintiff's past medical and surgical history ensuring that her opinion stems from a well of knowledge about plaintiff's current and past functioning. However, the ALJ discounted Dr. Saddoris' opinion stating that it was unsupported by her examination findings. That assertion fails to comport with the evidence as Dr. Saddoris provided a rationale for each of her findings pulling from plaintiff's medical history and her examination findings for each of her assertions. Record, pages 383 through 384.

The ALJ also arguably took issue with the plaintiff's use of prescription medications. Specifically, I'm referring to the record at page 24 where the ALJ states that "The evidence suggests she did not take medications as prescribed, and instead had a pattern of seeking early refills, as well as evidence of discharge from certain doctors."

If that is what the ALJ was attempting to establish in her opinion, she failed to do so. There is not any type of a well-reasoned analysis of the medical information with respect to the plaintiff's prescription medication.

There is some evidence in the record about filling prescriptions and doctors' observations regarding that. Specifically, I'm referring to a reference at page 397 of the record in which

7

Dr. Guse talks about an awkward situation involving refills, but in making that reference, he indicates that the plaintiff had been seen at the pain clinic at a location off of U.S. 31. And he says "I think there is quite a bit of turmoil at that clinic recently." He goes on to describe the turmoil.

He also mentions that the plaintiff had visited the ER. And this evidence, as well as other evidence in the record, suggests that there might be other reasons for any issues with respect to any irregularities in the plaintiff's use of prescription medication.

As plaintiff's counsel pointed out in oral argument, there's nothing in the record to suggest that Dr. Guse, or any other doctor, stopped filling plaintiff's prescriptions, or limited her prescriptions, or otherwise directly challenged the manner in which she was taking her prescription medications.

Therefore, to the extent that the ALJ is trying to suggest that plaintiff was misusing her medications, and that as a result that undermines the plaintiff's credibility, such a conclusion would not be supported by substantial evidence.

Moreover, to the extent that the ALJ, or for purposes of this appeal, the commissioner, tries to rely upon the review by Dr. Fife, and then the affirmance of that review by Dr. Sands, the fact is that Dr. Fife fails to mention obesity at all. Record, pages 80 through 82.

And, of course, Dr. Sands doesn't mention anything. He just indicates that he had reviewed the record and affirms the finding. In short, the ALJ failed to construct a logical bridge between the evidence and her findings as it relates to the issue of obesity.

As a result, I believe that remand is necessary to allow the ALJ to fully consider and explain how plaintiff's obesity was considered in connection with plaintiff's other impairments. I believe that is what Goins and other decisions from the Seventh Circuit require.

8

There is another problem with the ALJ's decision as well. In recent Seventh Circuit cases, the Court has questioned an ALJ's reliance on a vocational expert's testimony regarding the number of jobs in the national economy.

In Hermann, H-E-R-M-A-N-N, versus Colvin, Seventh Circuit 2014, dated December 4th, in Browning versus Colvin, 766 F.3d, 702, Seventh Circuit 2014, the Seventh Circuit expressed profound doubt about the accuracy of vocational experts' statistics regarding the number of jobs available in the economy. Other circuits, such as the Second and the Fourth, have expressed similar doubts.

In Hermann, Judge Posner raised, among other concerns, the vocational expert's reliance on the Dictionary of Occupational Titles in support of the vocational expert's testimony regarding the number of available jobs. Judge Posner found this source obsolete and unreliable. Judge Posner questioned and implicitly criticized the ALJ's reliance on such numbers, which the record in that case provided no basis to verify.

The same is true here. A review of the record reveals the ALJ merely rattled off testimony about the number of jobs supposedly in the economy that the plaintiff could perform without any explanation of how she set on those numbers. Excuse me, it wasn't the ALJ who rattled those off. It was the vocational expert who rattled those numbers off, and the ALJ used them. That's in the record at pages 62 through 67.

The only apparent source mentioned was the Dictionary of Occupational Titles, which the ALJ raised, and which, as noted by Judge Posner, were obsolete.

This Court is duty bound to follow Hermann, Browning and Goins. Those cases and others instruct the lower courts that the ALJs cannot gloss over critical facts and blindly accept vocational expert testimony that has no apparent foundation in the record.

9

This Court will not be complicit in upholding a benefits denial decision that doesn't withstand review under Seventh Circuit jurisprudence.

The lawyers for the commissioner shouldn't be compliant in that either, and they should have mentioned the Goins decision. Now in fairness, that decision was issued shortly before they filed their response brief, but as acknowledged during oral argument, Goins is just the latest salvo in a ground swell of decisions taking a close look at the manner in which the ALJs are handling their decisions.

We must be intellectually honest with the facts and the case law before us. The facts are that the plaintiff was morbidly obese, and that contrary to governing Seventh Circuit case law, the ALJ failed to consider the effects of plaintiff's obesity on her other impairments. So this case should be remanded.

On remand, the ALJ will have the opportunity to consider whether and how plaintiff's obesity affects her RFC, and when deciding whether a person with plaintiff's RFC can work, I would hope that the ALJ would take a more exacting look at the facts and figures about jobs in the national economy that the vocational expert may articulate; but just to be clear, the basis for remand is the ALJ's failure to properly consider the plaintiff's morbid obesity.

Then, recognizing that the case should be remanded, at that point, the ALJ should consider the effect of that remand and additional consideration on the plaintiff's RFC, and I would hope take a fresh look at the basis for the vocational expert's conclusions.

I will ask the court reporter to transcribe that portion of this oral argument that sets forth that recommended decision. I will attach that to a brief entry that will be docketed, and any appeal will be required within 14 days after that transcript is filed.

I thank you for your arguments, and we are adjourned.

Dated: 12/30/2014

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

Meredith E. Marcus
DALEY DISABILITY LAW, PC
mmarcus@fdaleylaw.com

Luke F. Woltering
SOCIAL SECURITY ADMINISTRATION
luke.woltering@ssa.gov

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov